IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| NICHOLAS V. BLAIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:17-CV-276-M-BQ |
| LORIE DAVIS,[1] Director, | ) | |
| Texas Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. Petitioner filed objections, and the District Court has made a de novo review of the relevant portions of the Magistrate Judge's Report. For the reasons stated below, the objections are overruled, and the Court **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

Petitioner's objections focus on his allegation that the challenged disciplinary proceeding resulted in an extension of his "G5 restrictive housing" custody status for a minimum of six months. He claims this constitutes an "atypical and significant hardship," which creates a liberty interest that entitles him to habeas relief despite his ineligibility for mandatory supervision. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Petitioner does not allege, however, that the challenged disciplinary proceeding resulted in a change to his custody level or line class; instead,

---

[1] Pursuant to the recommendation of the Magistrate Judge, the caption of this case is being changed to reflect Lorie Davis as the proper Respondent in this case. Brian Collier will be terminated as Respondent.

1

he asserts that it resulted in his "remain[ing] line class 3," and "extend[ed]" his General Population Level 5 (G5) custody status for six to twelve months.[2]

A prisoner has no liberty interest in his custody level or classification unless he demonstrates that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hernandez v. Velasquez*, 522 F.3d 556, 562–63 (5th Cir. 2008) (quoting *Sandin*, 515 U.S. at 484); *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (noting that "any alleged due process or other constitutional violation arising from [custodial] classification is indisputably meritless"). Even placement or continued confinement in administrative segregation[3] does not, by itself, create a protectable liberty interest. *See Harper*, 174 F.3d at 719 (quoting *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998)) (noting that administrative segregation is "an incident to the ordinary life of a prisoner" and, absent extraordinary circumstances, "simply does not constitute a deprivation of a constitutionally cognizable liberty interest"); *see also Sandin*, 515 U.S. at 485 (holding a thirty-day assignment to segregated confinement, though punitive in nature, did not deprive prisoner of a liberty interest because the assignment did not "present a dramatic departure from the basic conditions of [the prisoner's] indeterminate sentence"); *Pichardo v. Kinker*, 73 F.3d 612, 613 & n.2 (5th Cir. 1996) (affirming dismissal of prisoner's claim that "mere placement in administrative segregation deprive[d] him of a liberty interest"). Courts have recognized an exception to this rule only when a prisoner is incarcerated in super-maximum security conditions for a lengthy or indeterminate duration. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 214, 223–24 (2005) (finding that prisoner's transfer to an Ohio "supermax" facility implicated a liberty interest, in part because (1) the

---

[2] Petitioner does not state why he was originally classified as a G5 offender or for how long he has maintained that status.

[3] According to TDCJ guidelines, administrative segregation is a higher custody level than Petitioner's G5 status, and generally imposes even greater restrictions. *See* Tex. Dep't of Criminal Justice, *Offender Orientation Handbook* 6 (Feb. 2017), www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf.

conditions were "more restrictive than any other form of incarceration in Ohio"; (2) confinement in supermax was indefinite; and (3) otherwise eligible inmates were disqualified for parole consideration while incarcerated in supermax); *Wilkerson v. Goodwin*, 774 F.3d 845, 855–56 (5th Cir. 2014) (finding that thirty-nine years in solitary confinement was an atypical and significant hardship constituting a liberty interest).

Petitioner has not demonstrated that the alleged extension of his G5 custody status constitutes an atypical or significant hardship. Petitioner claims, for the first time in his objections to the magistrate's Report, that G5 custodial classification means that he is restricted to a cell with no windows and constant fluorescent lighting twenty-four hours per day, and limited to only one hour per week outside. Petitioner does not swear to or affirm the veracity of these factual allegations. Nevertheless, even accepting such factual allegations as true, Petitioner has failed to demonstrate that his restrictive housing assignment meets the *Sandin* standard. Petitioner essentially claims that his disciplinary conviction resulted in an additional six to twelve months of solitary confinement. Solitary confinement alone, absent extraordinary circumstances, is "merely incident to ordinary prison life." *Wilkerson*, 774 F.3d at 853. Petitioner's allegation that his restrictive confinement will continue for six to twelve months is neither lengthy nor indeterminate when compared to the facts of *Wilkerson* or *Wilkinson*. Petitioner's claims regarding his custody level and confinement in restrictive housing are indisputably meritless.

Further, Petitioner has not demonstrated that his G5 custody level will subject him to the most restrictive environment in the Texas prison system. According to TDCJ's Offender Orientation Handbook, G5 status does not approach the level of restrictions imposed by administrative segregation, and certainly does not constitute "atypical and significant hardship." The G5 custody classification "refers to offenders who have assaultive or aggressive disciplinary

3

records" who must live in cells and "may not work outside the security fence without direct, armed supervision." *See* TDCJ *Offender Orientation Handbook*, *supra* note 3. Such offenders do receive, however, two hours each day in the gym or recreation yard (*id.* at 37–38), and are also allowed limited commissary access, *i.e.*, they can spend $25 at the commissary every two weeks. *Id.* at 67–68. In sum, Petitioner has failed to show that his custody level rises to the sort of extraordinary hardship contemplated by the *Sandin* court. Petitioner's objections are overruled.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and **DISMISSED** with prejudice for failure to state a claim.

Considering the record in this case, and pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing § 2254 Proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court adopts and incorporates by reference the Magistrate Judge's Findings, Conclusions, and Recommendation filed in this case in support of its finding that the Petitioner has failed to show that reasonable jurists would (1) find this Court's "assessment of the constitutional claims debatable or wrong" or (2) find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Judgment shall be entered accordingly.

In the event that the Petitioner files a notice of appeal, he will need to pay the $505.00 appellate filing fee or submit an application to proceed *in forma pauperis*.

SIGNED this 28th day of February, 2018.

_____
BARBARA M. G. LYNN
CHIEF JUDGE